UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ARONE McCONER,

    Defendant.
                                         /

Case No. 05-80213

Honorable Nancy G. Edmunds

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENT [22]**

At an evidentiary hearing held on June 30, 2005, this matter came before the Court on Defendant's Motion to Suppress statements during the execution of a search warrant at 4062 Lawrence, Detroit, Michigan. Defendant argues that his statements were initially made while he was subject to custodial interrogation and without being advised of his *Miranda* rights. He further argues that any statements made after subsequently being advised of his *Miranda* rights are "tainted" by his initial statements and thus should be suppressed. The Government responds that Defendant's statements were obtained after he was advised of his *Miranda* rights. For the reasons stated more fully below, the Court DENIES Defendant's motion to suppress.

**I. Facts**

On January 19, 2005, the Detroit Police executed a search warrant at 4062 Lawrence, Detroit, Michigan. (Gov't Resp. at 1). The search warrant was based on information from a confidential source of information and surveillance at the target location. (*Id.*) Defendant

and two other individuals were at this residence during the search. (Def. Br. at 1). As the officers entered the premises, Officer Hughes chased Defendant into the stairwell. (Gov't Resp. at 1). Defendant was turned over to other search crew members and handcuffed. (Def. Br. at 1). Another male was detained in the lower flat. (*Id.*)

After Defendant was handcuffed, the Officers found 32 grams of "chunk narcotics" from the dresser drawer, a loaded Colt 38 special firearm with five live rounds, and a Nike shoebox containing 409 grams of marijuana. (Gov't Resp. at 2). The search also produced narcotics paraphernalia, a scale, packaging materials, and proof of residency documents. (*Id.*) As a result, Defendant and another occupant of the house were arrested. (*Id.*) Defendant's person was searched. (*Id.*) The search resulted in keys to the house. Defendant was asked to retrieve his coat so that the officers could take him to the police station. (*Id.*) Six thousand two hundred and seventy eight dollars was found in the pocket of the coat Defendant identified as his. (*Id.*)

Defendant claims that he was initially questioned by Officer Hughes in the front bedroom. (Def. Br. at 1) Defendant alleges that Officer Hughes pressured him to "give him names" or he would be held responsible for the gun. (*Id.*) Defendant claims that at this time, he was not advised of his *Miranda* rights. (*Id.* at 2). Shortly thereafter, Officer Hughes interviewed Defendant in the kitchen (the "kitchen interview"). (*Id.*) Defendant made statements in response to questions about the gun and contraband. (*Id.*) At the end of the interview, Defendant claims Officer Hughes provided him with a "notice of his constitutional rights" form. (*Id.*)

The Government provides a different version of the facts. Defendant provided his

kitchen interview statements after being advised of his constitutional rights (Defendant's Attachment A). (Gov't Resp. at 2). Defendant signed and initialed each section of the form in the presence of Officer Hughes, prior to being interviewed. (*Id.*) He signed his name, indicating that he had been advised of his rights and read the notification (Defendant's Attachment B).

Defendant was subsequently indicted on the following charges: (1) Felon in Possession of a Firearm, 18 U.S.C. Section 922(g)(1); (2) Possession with Intent to Distribute Cocaine Base, 21 U.S.C. Section 841(a)(1); (3) Possession with Intent to Distribute Marijuana, 21 U.S.C. Section 841(a)(1); and (4) Possession of a Firearm in Furtherance of Drug Trafficking Crime, 18 U.S.C. Section 924(c)(1)(A). (Def. Br. at 1).

In his motion to suppress, Defendant argues that his statements were initially made while he was subject to custodial interrogation without being provided his *Miranda* rights. (*Id.* at 2.) He further argues that any statements made after being advised of his *Miranda* rights were tainted by his initial statements and therefore should be excluded from evidence at trial based on the Fifth Amendment and 18 U.S.C. Section 3501. (*Id.*) Officer Hughes testified that Defendant initially stated that he wanted to talk to him and that when it became apparent that Defendant wanted to provide a statement, he took him to the kitchen. Officer Hughes then read Defendant his *Miranda* rights and had him initial and sign a waiver form. Subsequently, Defendant gave answers to specific written questions that were read, reviewed, and initialed by Defendant.

## II. Analysis

Defendant argues that his statements were initially made while he was subject to custodial interrogation without being given his *Miranda* rights. He further argues that any

statements made after being advised of his *Miranda* rights were tainted by his initial statements which were involuntary. The Government argues that Defendant's incriminating statements were made after he received and acknowledged his understanding of his *Miranda* rights. This Court agrees with the Government.

**1. Governing Law**

The Government may not use statements stemming from custodial interrogation of a defendant unless it shows use of procedural safeguards effective to secure privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation means questioning initiated by law enforcement officials after a defendant has been taken into custody or otherwise deprived of his freedom of action in any significant way. (*Id.*) Interrogation must entail a measure of compulsion above and beyond that inherent in custody itself. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Law enforcement officers may not question an individual if he is alone and indicates in any manner that he does not want to be interrogated. *Miranda*, 384 U.S. at 445. "Failure to give the prescribed warnings and obtain a waiver of rights before custodial questioning generally requires exclusion of any statements obtained. Conversely, giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility..." *Missouri v. Seibert*, 124 S.Ct. 2601, 2608 (2004).

The Fifth Amendment provides in part, "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law." U.S. Const. amend 5. A defendant is deprived of his Fifth Amendment rights if his conviction is in anyway founded upon an involuntary confession. *Jackson v. Denno*, 378 U.S. 368, 376 (1964). The voluntariness of a confession is a mixed question

of fact and law. *Crenshaw v. Renico*, 261 F.Supp.2d 826, 836 (E.D. Mich. 2003). When a defendant claims that a confession was coerced, the Government has the burden of proving that the confession was voluntary. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). To determine if a confession is voluntary, the court must look at the totality of the circumstances. *Leadbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994); *Fikes v. Alabama*, 352 U.S. 191, 197 (1957). Those circumstances include, but are not limited to, police coercion, length of interrogation, continuity of interrogation, location of interrogation, suspect's maturity, suspect's education, suspect's physical condition and mental health, and whether suspect was advised his *Miranda* rights. *Crenshaw*, 261 F.Supp.2d at 836; *United States v. Crowder*, 62 F.3d 782, 787 (6th Cir. 1995). Further factors include whether overt force was used, whether promises were made, and whether Defendant is a newcomer to the criminal justice system. *United States v. Watson*, 423 U.S. 411, 424-25 (1976). In the absence of proof of improper police behavior, the mere display of weapons does not justify suppression of a petitioner's statements. *McCall v. Dutton*, 863 F.2d 454, 460 (6th Cir. 1988). The fact of custody alone has never been enough in itself to demonstrate a coerced confession. *Watson,* 423 U.S. at 424.

Further, in determining the voluntariness of a confession, the Court may consider the factors detailed in Title 18 U.S.C. Section 3501. The relevant parts provide:

(A)  In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(B)  The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including:

(1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest before arraignment,
(2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,
(3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,
(4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and
(5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

**2. Application**

If Defendant made involuntary statements before being given his *Miranda* rights those statements must be suppressed. Defendant initially asked to speak with Officer Hughes in the bedroom and volunteered that he had just gotten out of prison and could not be around drugs and guns. Officer Hughes further testified that when it became apparent that Defendant wanted to provide a statement, he took him to the kitchen. Officer Hughes then read Defendant his *Miranda* rights and had him initial and sign a waiver form. Officer Hughes denied that he pressured Defendant to "give him names" or he would be held responsible for the gun. This Court credits the officer's testimony that the first bedroom encounter with Defendant was at his request and that the statements provided by Defendant subsequently in the kitchen were done so after Defendant was advised of his *Miranda* rights. As such, Defendant's motion to suppress is DENIED.

**III. Conclusion**

For the above stated reasons, Defendant's Motion to Suppress is DENIED.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated:  July 1, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 1, 2005, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager